# M. L. CALLAHAN, Defendant-in-Error, v. The TOWN OF MIDDLETON, Plaintiff-in-Error.—292 S. W. (2d) 501.

Western Section. May 25, 1954.

Petition for Certiorari denied by Supreme Court, October 8, 1954.

22

24

E. J. Harris, Bolivar, for plaintiff in error.

H. T. McCaslin, W. J. Savage, Jr., and H. B. Denton, Bolivar, for defendant in error.

AVERY, J. This suit originated in the Circuit Court of Hardeman County, Tennessee. It is an original suit brought by defendant-in-error, plaintiff below, M. L. Callahan, hereinafter designated as plaintiff, on May 3, 1952,

against the Town of Middleton, Hardeman County, Mc-Dade and McDade, a contracting firm and C. W. Bond, Commissioner of Highways and Public Works of the State of Tennessee, by which the plaintiff seeks to recover damage of the defendants for the taking of certain real estate belonging to the plaintiff, located in the Town of Middleton, Hardeman County, Tennessee, to be used for street or highway purposes.

The declaration in its original form is in three counts, but plaintiff, by proper motion was granted permission to amend the declaration by striking the entire third count. Though the summons ran against all of the parties above named, the declaration ran against the Town of Middleton only.

Briefly, the declaration alleges that plaintiff owned real estate in the Town of Middleton known as Rainbow Inn Cafe, the lot being located on the east side of the principal north and south street, which street is designated as Main Street and also as State Highway No. 125. The place of business was operated as a drive-in restaurant, and that in the spring and summer of 1952 the State of Tennessee through its Department of Highways and Public Works undertook to and did widen said Highway No. 125 through said town, by and with the knowledge and authority of said municipality and that in so doing the defendant took a strip of real estate including a sufficient amount for sidewalks, built a sidewalk across the entire front leaving a space or grass plot several feet wide between the walk and curb, changed the grade or level of the street, blocked plaintiff's front entrance, erected a concrete curb, cutting his business off from the street and confiscated his property, for public use, to his damage of $20,000.

26

The municipality filed a plea of not guilty. A plea undertaking to set up the use of the land taken for street and road purposes, adverse to plaintiff and his predecessors in title, and that the public had obtained the property by prescriptive right. Also a plea that the property had been dedicated to the municipality for street purposes for many years prior to the suit.

A replication was filed to the plea which denied the adverse possession, prescriptive and dedicative allegations.

The case was tried to a jury on January 15, 1953, and on January 16, 1953 the jury returned a verdict by which they found the issues in favor of the plaintiff and against the defendant and fixed the damages at $1,500, and judgment for that amount was rendered against the defendant and in favor of the plaintiff. On a motion for new trial the court approved the verdict, overruled and disallowed the motion and the defendant excepted to the action of the court, prayed and perfected its appeal to this Court, and has assigned errors.

The defendant assigned two errors, the first of which contains three grounds. The first assignment is simply that ''It was error for the Trial Judge to overrule the defendant's motion made at the conclusion of the introduction of all of the evidence for the direction for the jury to return a verdict for the defendant. This was error for the following reason: (a) There is no material evidence to support the verdict. (b) Because the plaintiff below waived and is estopped to claim any damage for right of way for said Highway No. 125 in front of his property. (c) Because the evidence conclusively shows that the plaintiff below did not own the land for which

he sues or any part thereof, and that the said land had been used by the public, as a matter of right for more than fifty years; and that the said land had been dedicated for the use of the public as a public street for many years prior to the institution of this suit."

The second assignment of error is that: "The evidence preponderates against the verdict of the jury."

■ The second assignment of error can be very easily disposed of. This Court is not concerned with the preponderance of the evidence. If there is any material evidence to support the verdict of the jury it is the duty of this Court to sustain the verdict of the jury and judgment of the court thereon. Accident & Casualty Ins. Co. v. Lasater, 32 Tenn. App. 161, 165, 222 S. W. (2d) 202; De Rossett v. Malone, 34 Tenn. App. 451, 239 S. W. (2d) 366, and numerous authorities not necessary to refer to.

The first assignment of error, and the grounds set out thereunder necessitates a review of both the facts and the law governing the issues to be determined in this case. This assignment of error is based upon grounds No. 1, 3 and 6 set out in defendant's motion for a new trial.

The exact controversy is not in the taking of the land or property which plaintiff insists is a part of the Highway No. 125. It is a strip which plaintiff contends was taken by the City of Middleton as a walkway or sidewalk and a grass plot. It is, therefore, proper to set out in this opinion an exact statement from count 1 of the plaintiff's declaration as follows:

"That plaintiff, however, gave the State authorities permission to encroach on his said lot to the extent necessary to widen said street or highway where

the same would be uniform in width throughout the town, that the said street or highway was so widened, and that plaintiff asked no compensation for the land he thus donated.

"That thereafter on or about May 1, 1952 the defendant, the Town of Middleton, acting through its mayor, John Wilson, and its Board of Aldermen apparently in accordance with the authority granted by its act of incorporation 'to open, improve, or extend streets, sidewalks, alleys and public squares' procured the curbing of said street or Highway No. 125 in front of plaintiff's place of business, and further encroached upon plaintiff's said lot by constructing a public sidewalk across the entire front thereof some distance east of the curb or margin of said street or highway as widened, leaving a grass plot several feet wide between the curb and said sidewalk, thereby changing the grade or level of the street, blocking plaintiff's front entrance, and illegally confiscating property and land of the plaintiff without compensating him thereof (therefor), after demand was made for compensation."

This sidewalk and grass plot are approximately 10 ft. deep or wide across the entire front of the lot upon which plaintiff owns the building and operates Rainbow Inn.

It is insisted by the plaintiff that the street proper was to be only 40 ft. in width from curb to curb; that the distance from the street curb to the wall of his building is 16 ft., of which 16 ft. the sidewalk and the grass plot took 10 ft. Tr. 18.

It is admitted by the plaintiff that he was one of a three-man committee to obtain deeds for the right of way

of said highway, and that in doing so, that committee had with it the plans submitted by the State Highway Department for the construction of what is referred to as State Aid Project No.—— Section——, which plan called for only 40 ft. in the right of way through the Town of Middleton. On the other hand it is insisted by the defendant that the plan proposed called for a right of way 60 ft. wide through the Town of Middleton.

On the trial of the case exhibit to the testimony of Claude A. Carter, County Judge for Hardeman County, is several sheets of the plan and profile of the proposed project, with particular emphasis to page 7 and page 2 of these plans. At page 2 there is shown a typical cross-section of the improvement outside the Town of Middleton and a "typical cross-section of improvement inside Middleton (Sta.) 238 plus 70 to (Sta.) 268 plus 77." This cross-section inside Middleton shows that the traveled street section, or from curb to curb is 18 ft. on each side of the center line, with a curb 2 ft. 6 in. on each side of the street, thus actually making the curb and street proper 41 ft. in width. This cross-section further shows that there is an anticipated future construction of a grass plot and a sidewalk on either side of said street and on the outside of the curb, the grass plot shown to be between the sidewalk and the curb of the highway. In the space designated "future sidewalk" there are the figures 6' and in the space designated as "future grass plot" are the figures 3'6". The cross-section, therefore, shows that the plans and profile as drawn contemplated some future construction of the sidewalk and grass plot after completion of the highway or street and curb, the whole area to be 60 ft. wide. Throughout this plan the area within the Town of Middleton was shown, between (Sta.) 238 plus

7 and (Sta.) 268 plus 77 on three sheets or pages numbered 6, 7 and 8. The street-highway plan is shown, the grass plot and concrete sidewalk is shown, each with the width hereinabove set out at every point within the city limits. However, in large printed letters on each of said three sheets there appears the following:

"Note: Sidewalks and conc. driveways are not to be constructed under S. A. P." (State A Project)

Immediately following the above quote, printed in red pencil are the words "See Sheet #2."

It is necessary to show the above in this opinion because of the fact that the Town of Middleton, the defendant, contends that it did not take the sidewalks and grass plots, but that the contractor for the State and the County did the whole construction. That the contractor did the construction is obvious from the testimony in connection with the street, curbs, sidewalks and grass plots, but it is likewise obvious from the plans that the State did not, when these plans were drawn and furnished, propose to construct the sidewalks and grass plots in connection with the street project proper. It is insisted by defendant that because of the fact that plaintiff accepted a position on the committee with which he worked in procuring the deeds to the right of way and that this committee had with them these plans showing an overall width inside the city, that he is estopped from proclaiming any damage in the taking of any of his property included within the sidewalk and grass plot areas.

The defendant contends that the opinion of the Supreme Court in Blackburn v. Dillon, 189 Tenn. 240, 225 S. W. (2d) 46, 48 is authority for its contention that plaintiff is estopped to claim that he did not dedicate the

area in question for the sidewalk and grass plot because he was one of a committee representing the county and state in procuring the rights of way for the highway through the streets of Middleton. This case is not authority for defendants contention. In that case the Supreme Court quoted with approval from the case of Southern R. Co. v. State, 130 Tenn. 261, 264, 169 S. W. 1173, L. R. A. 1915 B, 766 which said:

" 'Moreover, the town of Clinton alone has control over its streets and crossings within the corporate limits, and neither the county court nor any other authority can interfere with the municipality in the exercise of this control. Shannon's Code, sec. 1679; State v. Mayor, etc., of Town of Loudon, 3 Head. 263; De Tavernier v. Hunt, 6 Heisk. 599.' "

In the Blackburn v. Dillon case the complainant sought to enjoin the city from constructing a sidewalk 3½ ft. out in the street from the undisputed property line. His bill admitted that the city had a right of way 40 ft. wide and then averred that the city was constructing a sidewalk 3½ ft. out in the street from the margin of the private property line. The Supreme Court aptly and properly said:

"The question presented is, what agency has the power to determine the portion of the street to be used for a particular type of travel?"

There was no dispute that the city had acquired the whole 40 ft. right of way, but to the contrary in the instant case there is a sharp dispute that the city had a right by dedication, prescription, or otherwise, to a 60 ft. right of way through the town of Middleton.

In a final determination of the case of Blackburn v. Dillon, supra, the Supreme Court, after holding that the city was the controlling public authority, and quoting from the authorities hereinafter set out said:

" 'The controlling public authority has a right to determine what part of the nominal highway shall be devoted to the various purposes of passage * * *.' 25 Am. Jur., Highways, sec. 265, pp. 559, 560; See Hitchcock v. Zink; 80 Neb. 29, 113 N. W. 795, 13 L. R. A., N. S., 1110, 127 Am. St. Rep. 743; City of Georgetown v. Hambrick, 127 Ky. 43, 104 S. W. 997, 13 L. R. A., N. S., 1113, 128 Am. St. Rep. 333."

Francis L. Simpson, the City Recorder, stated that "We approved the State putting the sidewalk there and that is all." Tr. 55. J. O. Neely, a Municipal Board Member testified that, "We did not have anything to do with getting the right of way. The right of way was set up by the State and the engineers and the State and County paid for every dollar that I know anything about. The ony thing the town ever took any action on was that they went on record as favoring sidewalks on both sides of the street * * * they did not intend to put sidewalks down until April 1952." He was testifying in January 1953 and he was asked:

"Q. When was this curb built? A. Last fall a year ago."

This suit was filed in May of 1952. It would thus appear that the sidewalk was constructed only a short time after suit was brought.

The Mayor, John Wilson, witness for defendant, in answer to questions said:

"Yes, that is 40 ft. for the highway and 20 ft. for the sidewalks." R. 43.

█ It is obvious from the plans submitted that the street proper, through the Town of Middleton, including the curb on either side, did not exceed 41 ft. We see nothing about the action of Mr. Callahan, in connection with his committee service, that would estop him from claiming any damages which he might have sustained by virtue of the taking of any of his property outside of the street curb on his side of the street.

It is the contention of the defendant that sometime prior to the date plaintiff purchased the property in question it had been owned by the Railroad Company and while so owned it was dedicated to public use. A part of the evidence to sustain this contention is made up of certified copies of the deeds. The first of these was executed in 1854 by Jessie B. Jenkins to the Memphis and Charleston Railroad Co. It is not necessary to set out the description of the property conveyed. The next deed is one executed by the Southern Railway Co. June 26, 1939 and is a quitclaim deed to one V. E. Fields and wife, Willie Rogers Fields. The description is that deed is as follows:

"A certain piece or parcel of land situated in the town of Middleton, Hardeman County, Tennessee, lying and being north of the railroad of Southern Railway Company (formerly Memphis and Charleston Railroad Co.) described as follows: to wit,

"Beginning at a point one hundred (100) feet north of center line of Southern Railway main tract running between Stevenson, Alabama, and Memphis,

Tennessee, measured at a right angle from a point in said center line 2914 feet west of milepost 482-A; and running thence westwardly, parallel with and one hundred (100) feet north of center line of said main track, one hundred ninety (190) feet to the west property line of said Railway Company; thence northwardly, at right angle to said main track and coinciding with said west property line, one hundred (100) feet to the northwest corner of the property of said Railway Company; thence eastwardly, along present north property line of said Railway Company, parallel with and two hundred (200) feet north of center line of said main track, one hundred ninety feet; thence southwardly, at right angle to the last described line, one hundred (100) feet to the point of beginning; said parcel of land containing 19,000 square feet, and being located substantially as shown as outlined in red on drawing No. 12477, dated April 4, 1939, revised June 2, 1939, hereto annexed and made a part of this indenture;

"Being a portion of lot acquired by Memphis and Charleston Railroad from Jesse B. Jenkins by deed dated February 2, 1854, recorded in the office of the Register of Hardeman County, Tennessee, June 17, 1854, in Book M, page 264.

"Notwithstanding the inclusion of portions of public roads (one running north and south across said railroad and property and the other eastwardly from the first mentioned road) within the boundaries of the lot 100 x 190 feet hereby conveyed, it is understood that said roads will be kept open and this conveyance is made subject to said roads and all rights

of the State, County and public in and to the same and the use and maintenance thereof.''

> Exhibit 3 to the testimony of
> M. L. Callahan.

Thereafter the property was conveyed by Fields and wife to one John West in 1945, R. p. 1, and the description is identical with that from the Railroad to Fields, R. p. 3. West leased this property and operated the business on it for about five years before he bought it. This lease began in 1940. He sold the property to W. D. Bass in 1949, who in turn then conveyed it to the plaintiff, M. L. Callahan. In the deed from Bass to Callahan the property is described as follows:

''A house and lot in the Town of Middleton, known as the Rainbow Inn Cafe, and bounded as follows; north by street; south by Southern Railway Co.; east by land of Southern Railway Co.; west by street and further described as being the same property to W. E. Bass and Lillian Bass by John S. West and Clovis M. West on Aug. 22, 1949. Deed shown of record in the Register's Office of Hardeman County, Tennessee, Deed Book T-3, Page No. 350 on August 31, 1949.''

Without making specific reference to the record of the testimony of witnesses it is shown that this property, while owned by the Railroad was permitted to be used for many different public purposes. That there was a well on it at one time, used as a public well, which appears to be at a point about where Rainbow Inn Cafe now stands. It was a sort of an open space in the intersection of roads or streets and on which both the street running north and south and the one east and west were located, or at least a greater part of them. The traveling public

going into the town, turning from one of the streets into the other would cross the property wheresoever it afforded such convenience. Wagons, buggies and animals drawing them were parked and hitched all over this property and later automobiles were parked in any convenient place on it. This occurred through a long number of years, and because of these facts the defendant insists that it had an easement over all the property by dedication, implication, prescription and estoppel.

██ Looking to the question of estoppel first the defendant relies upon the cases of Prewitt v. Bunch, 101 Tenn. 723, 50 S. W. 748; Scott v. Hardaway Contracting Co., 17 Tenn. App. 470, 68 S. W. (2d) 944; Church of Christ v. McDonald, 180 Tenn. 86, 171 S. W. (2d) 817, 146 A. L. R. 1173; 19 Am. Jur., Estoppel, secs. 42, 54 and Consolidated Coal Co. v. O'Brien, 3 Tenn. Civ. App. 252. We do not think either of the cases or the text are applicable to the present suit. The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially, 19 Am. Jur. Estoppel Sec. 42, pp. 642-643.

█ The defendant cannot rely upon its defense that it was not a party to the construction of the street improvement and then claim that it relied upon the action of the Plaintiff by which they claim he is estopped. Such positions are wholly inconsistent, one with the other.

The plaintiff does not claim any damage for a sufficient right of way for street purposes across his property, which exhibits shows to be about 40 ft. wide. He merely claims damage for the property taken which was not included in the street or highway. The fact that he was put on a committee by the County to procure the rights of way created no obligation on his part to donate or give a right of way. The mere fact of his association with the other members of the committee in getting the deeds does not estop him in his right to claim damages for property taken outside of that which he insists that he did contribute or dedicate.

█ As to the question of a right by prescription on the part of the municipality or the public, it is said in the case of Nashville Trust Co. v. Evans, 30 Tenn. App. 415, 206 S. W. (2d) 911, 913, that:

"It is well settled that no length of user of a way by one over another's land will ripen into a prescriptive easement unless such user was adverse, under a claim of right, and not merely permissive." citing with approval Bowles v. Chapman, 180 Tenn. 321, 175 S. W. (2d) 313, and cases there cited; Lewisburg, Tennessee v. Emerson, 5 Tenn. App. 127.

It is also said in Nashville Trust Co. v. Evans that:

"But it is urged that the road here in question was a public road and that the public may acquire an easement by prescription without any showing that the

user was adverse, under a claim of right, and not merely permissive * * the same rule is applicable as in case of private roads.'' Citing with approval Henderson v. Alloway, 3 Tenn. Ch. A. 688, 694, and further quoting from that case by Judge Cooper, '' 'I do not understand that the public can acquire a right of way by mere use which is not adverse. In order to work this result, there must be an intention to dedicate the way to the public. Jackson v. State, 6 Caldw. 532; Scott v. State, 1 Sneed. 629; Mathis v. Parham, 1 Tenn. Ch. A. 533, * * * Worth v. Dawson, 1 Sneed. 59.' ''

■ ■ It can rightfully be said that, insofar as the street as it stood at the time the deed was made by the Railroad Co. to Fields, it had been dedicated, and under the subsequent deeds by which title passed to the plaintiff the streetway had been dedicated, but simply because people had driven across the corners of the lot, parked upon the property outside of the streetway and had driven at many angles across the property constituted no dedication of anything except the streetway. Therefore, the strip of land sought to be valued had not been dedicated. Dedication will not be inferred from mere permissive use of unenclosed land, Worth v. Dawson, 33 Tenn. 59; Jackson v. State, 46 Tenn. 532, 535; McKinney v. Duncan, 121 Tenn. 265, 118 S. W. 683; Bowles v. Chapman, 180 Tenn. 321, 324, 325, 175 S. W. (2d) 313, 314.

■ Again it is said in Nashville Trust Co. v. Evans, supra, [30 Tenn. App. 415, 206 S. W. (2d) 913], quoting and citing with approval Saunders v. Simpson, 97 Tenn. 382, 385, 37 S. W. 195, 196, to acquire an easement by prescription the requisites are as follows:

" ' "To give user this effect (prescriptive right) it must be uninterrupted in the land of another by the acquiescence of the owner for a period of at least 20 years under an adverse claim of right, while all persons concerned in the estate in or out of which it is derived are free from disability to resist it and are seized of the same in fee and in possession during the requisite period. Where all these circumstances concur, it raises prima facie evidence of a right to such easement acquired by grant which is now lost. * * *" ' ' (121 Tenn. at page 269, 118 S. W. at page 684.)"

The house was built on this lot, as shown by the proof some time about 1939 or 1940, after the Railroad Co. had conveyed the property to Fields, subject to the right of way for streets, but only the property used in the streets or as streets can be said to have been used adversely under any claim of right.

Unquestionably it can be inferred from the deed executed by the Railroad Co. to Fields, through which plaintiff acquired his title that there had been a dedication of a street or streets along two sides of this property, some of which had been black-topped or improved by public authority, but it is not shown that any public authority, State, County or Municipality ever acquired any prescriptive right, right by estoppel, adverse possession, dedication or otherwise in all parts of the lot. So it remained a jury question to determine what had been dedicated and what had not been dedicated, and as heretofore said we must presume that the jury acted properly under a proper charge of the Court.

There is a record dedication by both grantor and grantee, of property conveyed by a deed containing the

recitation quoted on page 8 of this opinion from the deed of the Railroad Company to Fields, and subsequent purchasers are bound thereby, but only to the part thereof so dedicated.

■ The whole question in the case is one of facts, and the defendant has seen fit to predicate its contention that the verdict of the jury and judgment of the court thereon are erroneous, upon a single assignment of error that the court should have instructed the jury to render a verdict for the defendant.

That being true it is our duty to disregard all countervailing evidence, considering only the evidence tending to prove the rights of the plaintiff, and if any competent evidence of a probative value is shown by the record the verdict of the jury and the judgment of the court thereon must be sustained.

■ We have very recently, in the case of Jones v. Sands, Tenn. App. 292 S. W. (2d) 492, 498, set forth what we consider the correct position of a Trial Judge in considering the motion for a directed verdict in the following words:

"From the whole of the relevant, material and substantial evidence introduced by the party against whom the motion is made together with all other evidence in the case materially supporting the position of such party and all legitimate inferences of fact favorable to him which may be legally drawn from such evidence, disregarding all other countervailing evidence, can the party against whom the motion is made succeed, under the proper charge of the court, is the correct position of a trial judge in considering a motion for a directed verdict."

██ Certiorari was recently denied by the Supreme Court. It is our duty, in the examination of a record, where the principal assignment of error is based upon the refusal of the Court to direct a verdict, to assume the same position. Tyrus v. Kansas City, Ft. S. & M. R. Co., 114 Tenn. 579, 86 S. W. 1074; Smith v. Sloan, 189 Tenn. 368, 376-377, 225 S. W. (2d) 539, 227 S. W. (2d) 2; Mc-Mahan v. Tucker, 31 Tenn. App. 429, 216 S. W. (2d) 356, 360; Tennessee Central Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931; Prudential Insurance Co. of America v. Davis, 18 Tenn. App. 413, 429, 78 S. W. (2d) 358, 368; Wildman Manufacturing Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984, 985; Cude v. Culberson, 30 Tenn. App. 628, 209 S. W. (2d) 506; Hammond v. Union Planters National Bank, 189 Tenn. 93, 222 S. W. (2d) 377; Chapman v. Evans, 37 Tenn. App. 166, 261 S. W. (2d) 132, 135.

██ We presume the charge of the Court was correct, while it does not appear in this record, as hereinabove stated, neither is there any attack made against it, and he saw the witnesses, heard their testimony and we think he properly refused to instruct the jury in accord with the motion.

In its effort to substantiate its position with respect to its motion for preemptory instructions the defendant has cited cases holding that a sidewalk is, in legal contemplation, a part of the street, primarily used for pedestrians, of course. Defendant relies upon the case of Blackburn v. Dillon, 189 Tenn. 240, 225 S. W. (2d) 46. That case is authority insofar as it relates to a sidewalk already constructed by it, and in the instant case the defendant now has control over and can fully regulate the use of the sidewalk and the grass plot in question. However, the jury

has decided that the strip of land upon which the grass plot and sidewalk are located had never been dedicated for street purposes and the city did not own it at the time the walk and grass plot were constructed.

 The fact that the County and State construct, out of their own funds, or in conjunction with the Federal Government, or otherwise, highways through cities and incorporated towns, the incorporated town or city has not lost its right, factoral or legal, in the street. Wood v. Foster & Creighton Co., 191 Tenn. 478, 235 S. W. (2d) 1; City of Knoxville v. Harth, 105 Tenn. 436, 58 S. W. 650.

 When the city permits the county or the State to construct highways through it, acting in conjunction with the Highway Department of the State of Tennessee, whether the city contributes any funds or not, it cannot escape liability for the taking of private property for public use. Wood v. Foster & Creighton Co. supra; McDonald v. Scott County, 169 Tenn. 374, 87 S. W. (2d) 1019; Knox County v. Lemarr, 20 Tenn. App. 258, 97 S. W. (2d) 659.

The result is, therefore, that all assignments of error are overruled, the judgment of the trial court affirmed, and judgment will be entered here, in accord with this opinion, for the plaintiff and against the defendant, City of Middleton, for the amount of the verdict of the jury $1500 with interest thereon from the 27th day of July, 1953, and all the cost of this case.

Swepston, P. J. (W. S.), and Carney, J., concur.