# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### MARCH 2000 Session

## HARTSVILLE HOSPITAL, INC. v. THE BAY NATIONAL BANK AND TRUST COMPANY

**Direct Appeal from the Chancery Court for Trousdale County**
**No. 6092;     The Honorable C. K. Smith, Chancellor**

---

**No. M1999-01276-COA-R3-CV - Filed August 16, 2000**

---

This appeal arises from a dispute over the ownership of monies held in a bond fund. Hartsville Hospital Incorporated ("Hartsville") filed suit against Bay National Bank ("Bank") seeking the contents of the fund. The court below entered judgment for Hartsville, holding that Bank had no claim to the bond fund money pursuant to a release agreement between the parties and that Hartsville was not estopped from asserting ownership. Bank appeals.

**Tenn. R. App. P. 3;Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and FARMER, J., joined.

David B. Foutch, Lebanon, for Appellant

Sharon Linville, Hartsville, for Appellee

### OPINION

On August 1, 1974, the Health and Educational Facilities Board ("Board") of Hartsville, Tennessee entered into an Indenture of Mortgage and Deed of Trust in the amount of one million one hundred and fifty thousand dollars. The money was used to fund the creation and operation of a general hospital and related facilities. Pursuant to the indenture, a bond fund was created, with Bank serving as Trustee. The bond fund contained lease rentals and revenues from the hospital. The real and personal property of the hospital and facilities served as a security interest on the bonds.

At this time, the Board also entered into a lease agreement with Hartsville General Hospital Company[1] ("Company") under which Company was to repay the indenture. On July 10, 1979, the

---

[1]Neither Hartsville General Hospital Company, nor Hartsville Medical Center, Limited are affiliated with

(continued...)

lease was modified and Hartsville Medical Center, Limited, became the lessee. Apparently, Hartsville Medical Center, Limited was the lessee when the lease went into default on July 31, 1989.[2]

In March 1993, Hartsville began operating the hospital facilities. Over the following year, Hartsville purchased the hospital, subject to the Indenture. At some point during this process, Hartsville and Bank began to negotiate a release of the Indenture. The parties eventually reached a release agreement by which Hartsville would pay a reduced lump sum payment in exchange for the release of Bank, on behalf of the bondholders, of all security interests and liens in the real and personal property securing the bonds. A release agreement requiring Hartsville to pay seventy-five thousand dollars to Bank was executed.[3] The release neither specifically included nor excluded the

---

[1](...continued)
Hartsville Hospital Incorporated.

[2]The bondholders did not receive any *principal* payments following default. However, semi-annual *interest* payments continued to be paid to the bond holders until August 1990. The interest payments to the bond holders during this period totaled approximately twenty-five thousand dollars. In 1991, Bank as trustee received an additional twenty-four thousand dollars in rental payment which was held in an interest bearing account. Bank did not make any additional payments to the bond holders.

[3]The exact terminology of the release agreement provides as follows: "The Trustee, on behalf of the holders of the Bonds, has now agreed to release its security interests and liens in the real and personal property securing the Bonds according to the terms agreed upon by the Trustee and Hartsville. In connection with the release of its Security Interests and liens, the Trustee has agreed to release and terminate its rights in all security for the repayment of the Bonds including, but not limited to, the Deed of Trust, the Assignment of Lease and the Security Interests. *The Trustee shall have no further interest of any kind in any collateral securing repayment of the Bonds or any right to rent paid or accrued pursuant to the terms of the Lease.*
1. Obligations of Parties. According to the terms of this Agreement, Hartsville agrees to deliver to the Trustee funds (referred to hereinafter as the "Funds") in the amount of Seventy-Five Thousand Dollars ($75,000). In consideration of the receipt of these funds, the Trustee, pursuant to the written direction furnished by a majority of bondholders, *will cancel any promissory note made by Hartsville or the Board for the benefit of the Trustee or holders of the Bonds and release and terminate all liens, security interests and assignments in all assets granted in the Indenture or by other instrument to the Trustee by the Board or Hartsville to secure the repayment of the Bonds, including but not limited to assets owned by the Board and leased to Hartsville under the terms of the Lease, and including but not limited to the termination and release of the Deed of Trust, the Assignment of Lease and the Security Interests.* The forms of the release to be filed by the Trustee shall be in the forms attached hereto as Exhibit A.
2. Character of Payment. The funds delivered to the Trustee pursuant to this Agreement shall be applied by the Trustee to the obligations owed to the holders of the Bonds pursuant to the Indenture. *No additional funds will be required to pay any costs associated with the fees, charges and expenses of the Trustee or such other paying agents. All fees, charges and expenses of the Trustee shall be paid from the Funds delivered to the Trustee by Hartsville so that no other amounts are owed to the Trustee as of the date of this Agreement. The payment of the Funds by Harstville shall constitute payment in full by Hartsville of all amounts necessary to obtain the Trustee's release of all liens, security interests, and assignments and the Trustee's agreement not to pursue litigation against Hartsville or the assets securing the repayment of the Bonds. No other payment of rent or other charges or obligations is or will be owed by Hartsville.* The Trustee agrees to cancel any Bonds submitted for payment from the Funds. The Trustee waives the obligation of the Board of Hartsville to provide notice hereof under the Indenture if any is required. (emphasis added)

-2-

money held in the bond fund.[4]  Pursuant to the release agreement, Bank released its lien on the real and personal property securing the bonds.   Bank did not, however, turn over the money in the bond fund to Hartsville.[5]  Despite Hartsville's demands, Bank refused to tender this money, claiming that Hartsville was not entitled because the money was the sole property of the bondholders.

Hartsville filed suit in the Trousdale County Chancery Court, seeking a judgment against Bank for the amount held in the bond fund. Hartsville claimed the bond fund was an asset of the hospital, and Bank relinquished any claim to the bond fund by signing the release agreement. Bank answered, denying Hartsville had any right to the bond fund money. Thereafter, both parties filed a motion for summary judgment. The trial court granted Hartsville's motion on March 6, 1997, holding that Hartsville was entitled to judgment as a matter of law.  Following appeal by Bank, the Court of Appeals reversed and remanded the case, holding material issues of fact remained.

On remand, the case was heard on June 28, 1999.  Following a bench trial, the Chancellor entered an judgment in favor of Hartsville.  In delivering his opinion, the Chancellor classified the money held in the bond fund as "rent paid."  Further, the trial court found, by virtue of the release agreement, the Bank released any right to the money held in the bond fund.  Bank appeals.

On appeal, Bank claims that the court erred in holding that Hartsville was entitled to the money held in the bond fund.  In the alternative, Bank asserts that Hartsville is estopped from claiming an interest in the bond fund money.

## ANALYSIS

The standard of review for a non-jury case is de novo upon the record. Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995).  There is a presumption of correctness as to the trial court's factual findings, unless the "preponderance of the evidence is otherwise." TENN. R. APP. P. Rule 13(d).  For issues of law, the standard of review is de novo, with no presumption of correctness. Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).    In the case at bar, the only issue involves the interpretation of certain provisions of the release agreement entered into by the parties.  The interpretation of a written agreement is a matter of law and not of fact, therefore, our review is de novo on the record with no presumption of the correctness of the trial court's conclusions of law. Union Planters Nat'l Bank v. American Home Assurance Co., 865 S.W.2d 907, 912 (Tenn. App.1993).

---

[4]Although the bond fund money was not specifically disposed of in the written release, Bank claims that the parties discussed the status of the remaining money in the bond fund on February 3, 1994, *prior* to executing the release. According to Bank, Hartsville was aware that Bank considered the bond fund money property of the bondholders. However, the release agreement was actually signed by Hartsville on January 25, 1994, and by Bank on February 1, 1994. Therefore, the discussion on February 3, 1994, took place after the execution of the release.

[5]At the time this dispute arose, approximately twenty seven thousand and eight hundred dollars remained in the bond fund.

**A. Ownership of Bond Fund Pursuant to Contract Terms**

The primary rule in interpreting contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. Winfree v. Educators Credit Union, 900 S.W.2d 285, 289 (Tenn. Ct. App.1995); Rainey v. Stansell, 836 S.W.2d 117, 118 (Tenn. Ct. App.1992). In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. Taylor v. White Stores, Inc., 707 S.W.2d 514, 516 (Tenn. Ct. App.1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. Heyer-Jordan & Assocs. v. Jordan, 801 S.W.2d 814, 821 (Tenn.App.1990).

An ambiguity in a contract is characterized as doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one. Hillis v. Powers, 875 S.W.2d 273, 276 (Tenn. App.1993). However, the parties to a contract cannot create an ambiguity where none exists. Edwards v. Travelers Indemnity Co., 201 Tenn. 435, 300 S.W.2d 615, 617-618 (1957). "Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction." Heyer-Jordan & Assoc. v. Jordan, 801 S.W.2d 814, 821 (Tenn. App.1990). We now turn to the contract terms at issue in this case.

Three different phrases contained within the release agreement pertain to the bond fund. In the general language of the release agreement, the Bank agrees it will have, "...no further interest of any kind in any collateral securing repayment of the Bonds or any right to rent paid or accrued pursuant to the terms of the Lease." Under the section titled Obligations of Parties, the Bank agreed to "..release and terminate all liens, security interests and assignments in all assets granted in the Indenture or by other instrument to the Trustee by the Board or Hartsville to secure the repayment of the Bonds, including but not limited to assets owned by the Board and leased to Hartsville under the terms of the Lease, and including but not limited to the termination and release of the Deed of Trust, the Assignment of Lease and the Security Interests." Under the Character of Payment section, the parties agree Hartsville's payment of seventy-five thousand dollars to Bank is full payment, "...of all amounts necessary to obtain the Trustee's release of all liens, security interests, and assignments and the Trustee's agreement not to pursue litigation against Hartsville or the assets securing the repayment of the Bonds. No other payment of rent or other charges or obligations is or will be owed by Hartsville."

We find no ambiguity in these provisions. Each provision is consistent with the other, as well as the purpose of the release agreement as a whole. The parties negotiated for a complete release of all liens, security interests, collateral, and assignments held by Bank. By its very nature, the contents of the bond fund falls within these categories. The bond fund consists of rent payments, revenues, and receipts collected under the lease agreement.[6] We also find it appropriate to note that

---

[6]The contents of the bond fund is described in Section 503 of the original Indenture of Mortgage and Deed of Trust agreement.

while the bond fund is not specifically mentioned in the release agreement, the agreement, by its terms, is not limited to named assets.  Therefore, under the usual, natural and ordinary meaning of the contract terms, the Bank relinquished any claim to the bond fund when it entered into the release agreement with Hartsville.  Accordingly, the trial court did not err on this issue.

## B. Estoppel

As an alternative, Bank claims that Hartsville is estopped from asserting ownership of the money held in the bond fund.  In support of this argument, Bank relies on the conversation between Bank's attorney and Hartsville's attorney on February 3, 1994.  Bank claims it relied on this conversation when making and performing the release agreement.  Based upon the following, we find that estoppel is not appropriate in this case.

The doctrine of estoppel is not favored under Tennessee law.  The party seeking to invoke estoppel has the burden of proving each and every element. Robinson v. Tennessee Farmers Mut. Ins. Co., 857 S.W.2d 559, at 563 (Tenn.App. 1993) citing Bokor v. Holder, 722 S.W.2d 676 (Tenn.App.1986).  This Court addressed the doctrine of equitable estoppel in Consumer Credit Union v. Hite, which held:

> The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;  (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.  As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question;  (2) Reliance upon the conduct of the party estopped;  and (3) Action based thereon of such a character as to change his position prejudicially, 19 Am.Jur.Estoppel Sec. 42, pp. 642-643.

Hite, 801 S.W.2d 822 at 825 (Tenn. Ct. App.1990), citing Callahan v. Town of Middleton, 41 Tenn.App. 21, 292 S.W.2d 501 (1954).

We find it necessary to address only one of the factors listed above: the alleged reliance of Bank on Hartsville's conduct.  The conversation on which Bank claims it relied took place after both parties had reviewed and signed the agreement.  Accordingly, since both parties were already bound under the agreement at the time of the conversation, Bank did not rely on the conversation to its detriment when making the agreement.  At the time of the conversation, Bank was already obligated to perform.  We find that Bank did not meet its burden of proof on this element.  Therefore, the trial court did not err on this issue.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is hereby affirmed. Costs of appeal are taxed to Appellant, Bay National Bank & Trust Company, for which execution may issue, if necessary.

                                         _____

                                         ALAN E. HIGHERS, JUDGE