IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 20, 2017 Session

## DERMON-WARNER PROPERTIES, LLC v. STEVE H. WARNER

Appeal from the Chancery Court for Shelby County
No. CH-12-0976     Jim Kyle, Chancellor

_____

No. W2016-02051-COA-R3-CV

_____

A member of a limited-liability company withdrew from the company with a deficit in his capital account. The company filed suit against the withdrawing member on the ground that he had an obligation to repay the deficit amount. The withdrawing member filed a counter-complaint arguing that the company was estopped from collecting the debt because the debt had been forgiven. Thereafter, the parties filed cross-motions for summary judgment. The trial court denied the withdrawing member's motion and granted the company's motion, finding that the withdrawing member failed to prove that the company forgave the debt. The withdrawing member appealed. We affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Robert L.J. Spence, Jr., and Andrew Mark Horvath, Memphis, Tennessee, for the appellant, Steve H. Warner.

Louis Jay Miller, Memphis, Tennessee, and Jerry Alan Schatz, Germantown, Tennessee, for the appellee, Dermon-Warner Properties, LLC.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Dermon-Warner Properties, LLC ("DWP") is a Tennessee limited-liability company that was formed on August 28, 1997 for the purpose of managing commercial and residential properties. It consisted of two members, Dave Dermon Co. and Steve H. Warner. Both members owned a fifty percent interest in DWP.

DWP established and maintained a capital account for each member pursuant to its operating agreement. Concerning the capital accounts, Article 4.1 of the operating agreement provided, in pertinent part, as follows:

> Capital Accounts. In general, each Capital Account shall be credited with the amount of each Member's Contributed Capital and each Member's share of Net Profits. Each Member's Capital Account shall be debited with that Member's share of Net Losses and with the amount of all distributions made by the Company to that Member.

The operating agreement also addressed the treatment of capital accounts in the event a member withdrew from DWP. Article 9.5 provided:

> Withdrawal. A Member may withdraw from the Company for any reason after ninety (90) days' written notice to the Company and remaining Members. The Company shall pay to such Withdrawing Member an amount equal to the value of such Withdrawing Member's Capital Account balance as of his date of withdrawal . . . within six (6) months of the determination of such amount.

On December 31, 2010, Mr. Warner withdrew as a member of DWP with a negative balance in his capital account in the amount of $399,657.00. Mr. Warner did not pay DWP the negative balance in his capital account when he withdrew from the company. In 2011, Mr. Warner received an Internal Revenue Service ("IRS") Schedule K-1 Form issued by DWP depicting income to him in the amount of the capital account deficit. Wayne Vanderford, the certified public accountant for DWP, prepared the 2011 Schedule K-1.

DWP sent a letter to Mr. Warner's attorney on February 8, 2012, demanding that Mr. Warner pay to the company the negative balance in his capital account or dispute the claim and provide documentation supporting his position. When Mr. Warner failed either to pay DWP for the negative balance or dispute the claim, DWP initiated this lawsuit on June 12, 2012, asserting claims for unjust enrichment and breach of the operating agreement.

Following discovery, DWP filed a motion for partial summary judgment seeking a judgment against Mr. Warner for the negative capital account balance pursuant to Article 9.5 of the operating agreement. Recognizing that Article 9.5 does not address the obligation of a withdrawing member to reimburse DWP for a capital account deficit upon withdrawal, DWP asserted that it was only "logical and equitable" for such an obligation to exist because DWP had an obligation to pay a withdrawing member's positive capital account balance at the time of withdrawal. The trial court agreed and, on March 17, 2015, it entered an order granting DWP partial summary judgment. The trial court

- 2 -

further found that the sole remaining issue was what effect the issuance of the 2011 Schedule K-1 had on Mr. Warner's obligation to repay the deficit amount. Mr. Warner did not appeal the trial court's partial summary judgment determination.

On April 15, 2015, Mr. Warner filed a counter-complaint alleging that the debt had been forgiven by the issuance of the 2011 Schedule K-1. He asserted affirmative defenses including equitable estoppel and set-off. DWP filed a motion to dismiss the counter-complaint as not timely filed, which the trial court denied on July 30, 2015.

Mr. Warner filed a motion for summary judgment as to his counter-complaint on July 2, 2015. In his motion and supporting documents, Mr. Warner admitted he had an obligation to pay DWP the negative balance in his capital account but argued he was entitled to a set-off in the amount he owed because the issuance of the 2011 Schedule K-1 constituted forgiveness of his obligation. On October 1, 2015, DWP filed a cross-motion for final summary judgment on both Mr. Warner's counter-complaint and DWP's original complaint. DWP argued that (1) Mr. Warner had an obligation to pay DWP for the negative balance in his capital account pursuant to the order granting it partial summary judgment in March 2015, (2) Mr. Warner's only defense for not paying the debt was that issuance of the 2011 Schedule K-1 represented a forgiveness or discharge of his obligation, and (3) the 2011 Schedule K-1 contains no indication that DWP discharged or forgave the debt.

The trial court heard the cross-motions for summary judgment on April 27, 2016, and entered an order on May 6, 2016, denying Mr. Warner's motion and granting DWP's motion for final summary judgment. The court reasoned that because Mr. Warner "admitted the creation and existence of a debt," he had the burden of proving "release, cancellation or discharge of the debt, by a preponderance of the evidence." The court found that Mr. Warner failed to carry his burden because the record contained no proof that DWP either discharged or forgave the negative balance in Mr. Warner's capital account.

On June 1, 2016, Mr. Warner filed a motion to alter or amend the order denying Mr. Warner's motion for summary judgment and granting final summary judgment to DWP. Mr. Warner contended that the trial court applied an incorrect standard of review by requiring that he prove his claims or defenses by a preponderance of the evidence at the summary judgment stage. The trial court denied the motion because "there was no proof in the Record brought forth by the Defendant showing any intent of forgiveness or cancellation of the debt on the part of [DWP]."

Mr. Warner perfected this appeal and raises the following issues: (1) whether the issuance of the 2011 Schedule K-1 constituted a forgiveness of Mr. Warner's obligation to pay DWP the negative balance in his capital account and (2) whether the trial court erred in not considering his equitable estoppel defense.

STANDARD OF REVIEW

Whether a party is entitled to summary judgment is a matter of law, which means that we review the trial court's judgment de novo, according the trial court's decision no presumption of correctness. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence that affirmatively "negates an essential element of the nonmoving party's claim" or demonstrate "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Tenn. Code Ann. § 20-16-101. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015) (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, or responses to interrogatories that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. When the moving party fails to make the required showing, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin*, 271 S.W.3d at 83 (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

Because any party may move for summary judgment under Tenn. R. Civ. P. 56, cases sometimes involve cross-motions for summary judgment. *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 82 (Tenn. 2010). As the Tennessee Supreme Court explained in *CAO Holdings v. Trost*:

> Cross-motions for summary judgment are no more than claims by each side that it alone is entitled to a summary judgment. The court must rule on each party's motion on an individual and separate basis. With regard to each motion, the court must determine (1) whether genuine disputes of material fact with regard to that motion exist and (2) whether the party seeking the summary judgment has satisfied Tenn. R. Civ. P. 56's standards for a judgment as a matter of law. Therefore, in practice, a cross-motion for summary judgment operates exactly like a single summary judgment motion.

*Id.* at 83 (citations omitted).

In determining whether a party is entitled to summary judgment, we must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Martin*, 271 S.W.3d at 84 (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley*, 960 S.W.2d at 588). A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

ANALYSIS

A. Legal Effect of the Schedule K-1

Mr. Warner first argues that the trial court erred in finding there was no proof in the record that DWP discharged or forgave the debt. He asserts that the 2011 Schedule K-1 constituted a discharge or forgiveness of the outstanding negative balance in his capital account because the form reported a capital account balance of zero and showed income to Mr. Warner in the amount of the negative balance. He further asserts that he relied upon this representation of debt forgiveness and claimed it as income on his personal income tax returns, incurring personal income tax liability. Mr. Warner urges this Court to hold that the issuance of the 2011 Schedule K-1 reflected that the debt had been discharged and operated to estop DWP from subsequently collecting the debt.

There are no Tennessee cases addressing whether the issuance of a Schedule K-1 tax form reflects discharge of a debt. Mr. Warner relies on cases involving IRS tax form 1099-C to support his argument. A Form 1099-C is filed by creditors to report cancelled income for debtors. *I-75 Partners, LLC v. Stefanutti*, No. 310324, 2014 WL 702332, at *10 (Mich. Ct. App. Feb. 20, 2014). Courts have reached differing conclusions regarding whether issuance of a Form 1099-C operates to discharge a debt. *Id.* Mr. Warner advances what is considered the minority view. Under the minority view, "the filing of an IRS Form 1099-C alone is prima facie evidence of a discharge, which then requires the creditor to prove that the form was filed by mistake or pursuant to other IRS requirements." *Flathead Bank of Bigfork v. Masonry by Muller, Inc.*, 383 P.3d 215, 216 (Mont. 2016). Courts following the minority view have noted that "'it would be inequitable to permit a creditor to collect the debt after having received the benefit of the "charge off" of the debt from filing the Form 1099-C.'" *Id.* at 217 (quoting *Fed. Deposit Ins. Corp. v. Cashion*, 720 F.3d 169, 178 (4th Cir. 2013)). A majority of courts, however, have concluded that the form is simply a method for complying with IRS reporting requirements and does not, alone, bar a creditor from collecting payment of a debt. *Id.* at 218; *see also In re Reed*, 492 B.R. 261, 268 (E.D. Tenn. 2013).

We begin by recognizing that inherent differences exist between the Schedule K-1 in this case and a 1099-C form. A creditor must file a 1099-C form to report a discharge of indebtedness upon the occurrence of an identifiable event. *Cashion*, 720 F.3d at 178 (citing 26 C.F.R. § 1.6050P-1(a)). "The identifiable events include discharge through the debtor's filing for bankruptcy, the expiration of the statute of limitations for collection, discharge by agreement of the parties, a creditor's decision 'to discontinue collection activity and discharge debt,' and 'expiration of the non-payment testing period.'" *Id.* (quoting 26 C.F.R. § 1.6050P-1(b)(2)(i)). Schedule K-1 forms, on the other hand, are filed by partnerships to report income or loss that flows through a partnership to its partners. *Owen v. Hutten*, No. M2012-02387-COA-R3-CV, 2013 WL 5459035, at \*3 (Tenn. Ct. App. Sept. 27, 2013). The term "partnership" may include limited-liability companies for federal income tax purposes. *See* https://www.irs.gov/pub/irs-pdf/i1065.pdf (Definitions for the General Instructions section). Unlike a 1099-C, the Schedule K-1 form does not require the occurrence of an "identifiable event" to trigger the filing requirement. As Wayne Vanderford, the certified public accountant who prepared the 2011 tax Schedule K-1 regarding Mr. Warner's capital account, explained in his deposition, the law requires a partnership to file a tax return each year and the Schedule K-1 is a part of the partnership return. *See* 26 U.S.C.A. § 6031(a), (b) (requiring a partnership to file a tax return each year and to "furnish to each person who is a partner . . . a copy of such information required to be shown on such return").

A 1099-C form from 2011 clearly refers to a discharge of a debt because it includes the language "Cancellation of Debt" in bold type at the top right corner of the document, *see* https://www.irs.gov/pub/irs-prior/f1099c--2011.pdf, whereas the Schedule K-1 in this case contains no such language. The 2011 Schedule K-1 at issue shows that Mr. Warner had an "Ending capital account" balance of zero and income in the amount of $399,657.00, which Mr. Warner argues indicated that DWP discharged his debt. Mr. Vanderford, however, explained in his deposition why the negative balance was reported as income to Mr. Warner: "His capital account was in the negative. And when the capital account is in the negative and you leave without repaying that capital account, that is considered income for federal tax purposes and is reported as such." Mr. Vanderford further explained that the Schedule K-1 reflected a zero balance in Mr. Warner's capital account "for tax accounting purposes." Thus, in this context, we do not find the cases concluding that filing a 1099-C form is prima facie evidence that a debt has been discharged to be persuasive. In light of the differences between a 1099-C form and the Schedule K-1 in this case and Mr. Vanderford's testimony, we believe the issuance of the 2011 Schedule K-1 does not indicate that DWP forgave Mr. Warner's debt. A thorough examination of the record reveals no evidence suggesting that DWP discharged or forgave Mr. Warner's debt. We, therefore, conclude that the trial court did not err in granting DWP's motion for summary judgment based on its finding that the record contained no proof that DWP discharged or forgave the outstanding negative balance of Mr. Warner's capital account.

B. Equitable Estoppel Defense

Mr. Warner next argues that the trial court erred in not considering his equitable estoppel defense. Specifically, Mr. Warner argues that the trial court prematurely cut off its analysis of the issue after finding that the 2011 Schedule K-1 did not constitute proof that DWP discharged or forgave his debt. Mr. Warner asserts that the trial court should have considered his equitable estoppel argument because the 2011 Schedule K-1 estopped DWP from collecting the outstanding negative capital account debt when he relied upon the Schedule K-1 as forgiveness of the debt, claimed the forgiven debt as income, and incurred tax liability.

Equitable estoppel is an affirmative defense. TENN. R. CIV. P. 8.03. Mr. Warner had the burden of proving that DWP was estopped from collecting the debt. *Tenn. Farmers Mut. Ins. Co. v. Farrar*, 337 S.W.3d 829, 837 (Tenn. Ct. App. 2009). The requirements of an equitable estoppel claim are as follows:

> "The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially."

*Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990) (quoting *Callahan v. Town of Middleton*, 292 S.W.2d 501, 508 (Tenn. Ct. App. 1954)).

When DWP moved for final summary judgment, it challenged the sufficiency of Mr. Warner's evidence to establish an essential element of his equitable estoppel claim. Specifically, DWP challenged the element pertaining to false representation. DWP asserted that the 2011 Schedule K-1 did not reflect that the debt had been discharged or forgiven. DWP further asserted that it did not intend to forgive the debt. As support for the latter assertion, DWP attached to its motion a letter to Mr. Warner's attorney demanding payment of the outstanding negative capital account balance. The burden then shifted to Mr. Warner to produce evidence of specific facts demonstrating the existence of an issue of material fact. *See* TENN. R. CIV. P. 56.06. Mr. Warner produced the 2011 Schedule K-1, arguing that it was prima facie evidence that DWP discharged or forgave his debt.

As previously mentioned, Mr. Warner relies on cases involving 1099-C forms where a minority of courts held that the form reflected forgiveness of a debt. There are cases where debtors relied on a 1099-C form and claimed the discharged debt as taxable income. *See In re Reed*, 492 B.R. at 271; *In re Welsh*, No. 06-10831ELF, 2006 WL 3859233, at *1 (Bankr. E.D. Pa. Oct. 27, 2006); *Franklin Credit Mgmt. Corp. v. Nicholas*, 812 A.2d 51, 54 (Conn. Ct. App. 2002). The courts applying the minority view have held that the creditor was estopped from pursuing collection of the debt because:

> It is inequitable to require a debtor to claim cancellation of debt income as a component of his or her gross income and subsequently pay taxes on it while still allowing the creditor, who has reported to the Internal Revenue Service and the debtor that the indebtedness was cancelled or discharged, to then collect it from the debtor.

*In re Reed*, 492 B.R. at 271 (footnote omitted). As discussed above, however, we do not find the cases concluding that 1099-C forms demonstrate debt forgiveness to be persuasive in this case and do not consider the 2011 Schedule K-1 as prima facie evidence that DWP forgave the debt. As a result, the 2011 Schedule K-1 alone does not amount to a false representation that DWP discharged or forgave the debt.

An examination of the record reveals no evidence that DWP falsely represented that the debt had been discharged or forgiven. In fact, the record contains evidence to the contrary. DWP attached to its motion for final summary judgment a letter to Mr. Warner's attorney demanding that Mr. Warner pay to DWP the negative capital account balance, thus demonstrating DWP's intent to collect the debt. The record also contains evidence indicating that the 2011 Schedule K-1 was not issued to convey the impression that DWP discharged or forgave the debt. Mr. Vanderford explained in his deposition that the 2011 Schedule K-1 reflected a zero balance in Mr. Warner's capital account and income to Mr. Warner in the amount of $399,657.00 for accounting purposes and in accordance with tax laws.

Another essential element of an equitable estoppel claim is that the party claiming estoppel experienced a prejudicial change in position due to reliance on the conduct of the estopped party. *Consumer Credit Union*, 801 S.W.2d at 825 (citing *Callahan*, 292 S.W.2d at 508). The record includes the affidavit of Mr. Warner in which he states that he reported the information from the 2011 Schedule K-1 on his 2011 personal income tax return. Because Mr. Warner is the nonmoving party, we must accept this evidence as true. Thus, the record contains evidence that Mr. Warner relied on the 2011 Schedule K-1 issued by DWP. Mr. Warner, however, submitted no evidence proving that he actually incurred tax liability as a result of the 2011 Schedule K-1. As a result, Mr. Warner did not prove he suffered a prejudicial change of position due to his reliance on the 2011 Schedule K-1.

In light of the foregoing, we conclude that Mr. Warner did not carry his burden of proof to show that DWP should be estopped from collecting the debt. We conclude, therefore, that the trial court did not err by denying Mr. Warner's motion for summary judgment and granting DWP's motion for final summary judgment.[1]

CONCLUSION

The judgment of the trial court is affirmed. This matter is remanded with costs of appeal assessed against the appellant, Steve H. Warner, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[1] Mr. Warner asserts that the trial court erred by applying an incorrect burden of proof analysis when it found that he did not carry his burden to prove by a preponderance of the evidence that DWP discharged or forgave the debt. In light of our conclusion that the trial court did not err by denying Mr. Warner's motion and granting DWP's motion, we find his argument is without merit.