IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 18, 2008 Session

## CINDY GOODSON HARVEY, ET AL. v. FARMERS INSURANCE EXCHANGE, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 05-0132      W. Frank Brown, III, Chancellor**

---

**No. E2007-02152-COA-R3-CV  - FILED SEPTEMBER 29, 2008**

---

Ronald W. Harvey, Jr., was involved in an automobile accident while driving a 1999 Dodge Caravan in the course of his employment with B&W Wholesalers. At the time of the accident, Mr. Harvey and his wife, Cindy Goodson Harvey (collectively "the Harveys"), had an automobile insurance policy with Farmers Insurance Exchange ("Insurance Company") that listed the Caravan as the covered vehicle. However, the policy included an exclusion for any vehicle "[w]hile used in employment by any person whose primary duties are the delivery of products or services[.]" Insurance Company refused to defend the Harveys in a lawsuit regarding the accident, claiming that the exclusion applies. The Harveys sought a declaratory judgment that the accident was covered by the policy. After a bench trial, the court dismissed the case and declared that the exclusion applied. The Harveys appeal, arguing that "delivery of products or services" was not among Mr. Harvey's "primary duties," and that, in any event, Insurance Company should be estopped from denying coverage because it knew how Mr. Harvey intended to use the van and provided coverage anyway. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Richard Korsakov, Chattanooga, Tennessee, for the appellants, Cindy Goodson Harvey and Ronald W. Harvey, Jr.

Gordon C. Aulgur, Nashville, Tennessee, for the appellee, Farmers Insurance Exchange.

### OPINION

Pursuant to Tenn. R. App. P. 13(d), "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." As for the trial

court's conclusions of law, the review remains *de novo*, but with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). "In general, the interpretation of an insurance policy is a question of law and not fact." *Charles Hampton's A-1 Signs, Inc. v. American States Ins. Co.*, 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006).

"Insurance contracts are subject to the same rules of construction and enforcement as apply to contracts generally." *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). They should be "construed as a whole in a reasonable and logical manner." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998). Disputed contractual language must be examined in the context of the entire agreement. *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). Words must be given their "usual, natural, and ordinary meaning." *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. Ct. App. 1986).

Most of the facts in the instant case are undisputed. The parties stipulated as follows:

> [T]he policy was issued to the plaintiffs here by Farmers Insurance Exchange . . . It was amended to cover the vehicle in question . . . [T]hat vehicle[,] driven by plaintiff Ronald W. Harvey, Jr., was involved in an accident in Polk County with Mr. [Terry] Burchfield, and Mr. Burchfield and his wife have filed suit in Polk County, which Farmers Insurance Exchange was notified [of] and . . . denied coverage based on [the] policy provision [excluding coverage for vehicles "[w]hile used in employment by any person whose primary duties are the delivery of products or services"] . . . and we're all in agreement that's the dispositive policy provision.

The full text of the policy provision at issue – which is actually an exception within an exception from a more general exclusion – reads as follows:

> This coverage does not apply to: . . . Bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle by any person employed or otherwise engaged in a business other than the business described in Exclusion 5 [relating to various automative industries].
>
> This exclusion does not apply to the maintenance or use of a:
>     a. Private passenger car.
>     b. Utility car that you own, if rated as a private passenger car, or
>     c. Utility trailer used with a vehicle described in a. or b. above.
>
> However, *this exclusion does apply to any vehicle:*
>
> *1. While used in employment by any person whose primary duties are the delivery of products or services*[.]

-2-

(Formatting omitted; emphasis added.)

It is undisputed that the accident occurred while the vehicle was being "used in employment." Thus, the key issue for purposes of ascertaining whether the accident was covered under the policy is the nature of Mr. Harvey's "primary duties." The trial court, in its memorandum opinion and order, aptly summarized the facts relating to this issue:

> Mr. Harvey's employment [is] as a route salesman for B & W Wholesalers ("B & W"). Mr. Harvey solicits orders for and delivers mostly tobacco products, candy, novelties and like items. Normally, Mr. Harvey would drive to his customers' stores each morning and solicit orders from them. Then, each afternoon, he would deliver the ordered-product to each customer. Mr. Harvey used the Caravan for all aspects of his business. Mr. Harvey's compensation was based upon a commission for the products he sold. B & W also paid him an allowance for gasoline as well as the wear and tear on his personal vehicle [*i.e.*, the Caravan].

The dispositive question is whether Mr. Harvey's "primary duties are the delivery of products or services," or whether, instead, the "delivery of products or services" was an secondary, incidental, or non-primary duty. The court summarized the parties' arguments, and stated its holding, as follows:

> The attorneys asked questions concerning, and argued about, which duty was primary – soliciting orders or delivery. The Plaintiffs took the position that Mr. Harvey's primary duty was soliciting orders. [They pointed out that] [i]f he did not solicit and obtain orders, then he would have no goods to deliver. [Insurance Company] argued that he would not be able to solicit orders if he did not deliver the products.
>
> It seems to the court that Mr. Harvey's soliciting orders was a service. It was a service to the customer because Mr. Harvey came to the customer and solicited orders. The customer did not have to call or go to B&W's office or the warehouse and order merchandise. Mr. Harvey's soliciting orders could also be said to be a service to B & W [as opposed to a service to the customers]. Regardless, Mr. Harvey clearly delivered in the afternoon the product that was ordered that morning. The court concludes that Mr. Harvey's "[p]rimary duties" was "[t]he delivery of products or services".

* * *

-3-

The court does not read the contract to require [Insurance Company] to prove that Mr. Harvey's use of the vehicle involved, for example, 60% delivery and 40% solicitation. Mr. Harvey's sole business use of the van was on both sides of the "or": "delivery of products or services." Mr. Harvey's use of the van primarily for services would exclude coverage. So would his primary use of the van for deliveries. Either way, the policy exclusion applies and there is no coverage for the Plaintiffs with respect to the Burchfields' claim and lawsuit.

Further, during his cross-examination, Mr. Harvey said he [bought] the van for making deliveries of product he sold. He said the van was better suited for delivery of product [than his previous vehicle, a Chevrolet pickup truck] because there was inside storage (and protection) compared to an open bed of a pickup truck. Mr. Harvey would not need a van to solicit orders but he wanted the van to deliver orders. Thus, it is the holding of the court, based on his specific testimony as to why he purchased the van and his use of the van, that Mr. Harvey's use of the van would bar coverage because the van was used primarily for deliveries.

We do not necessarily agree with all aspects of the court's reasoning. We are skeptical that soliciting orders constitutes a "service" within the plain meaning of the exclusionary clause, and even more skeptical that it constitutes "delivery of . . . services." However, we concur with the court's holding. *See Shutt v. Blount*, 249 S.W.2d 904, 907 (Tenn. 1952) ("if the Trial Judge reached the right result for the wrong reason, there is no reversible error"). In our view, the use of the plural form in the phrase "primary duties" is key. It clearly contemplates the possibility that a job may have more than one "primary" duty, and we believe that is true in this case. At trial, the Harveys emphasized that, unless he solicited orders, Mr. Harvey would have nothing to deliver, while Insurance Company emphasized that his employment as a salesman was contingent on his ability and willingness to deliver the products he took orders for. Both sides are correct. Based on the facts in this record, we find that solicitation of orders was a "primary" duty, and that "delivery of products" was *also* a "primary" duty. The evidence clearly demonstrates that *both* duties were wholly central and fundamental to Mr. Harvey's job. That sets them apart from the examples cited by Mr. Harvey's attorney at trial:

He also probably had to file paperwork and, you know, pay income taxes and, you know, shine his shoes and do lots of things, all of which I suppose may have been duties, but not the primary duty, and that's the language in this policy.

Actually, again, the language is not "primary duty," singular, but rather "primary duties," plural. Thus, counsel's argument that "to extend the word 'primary' to one of a group of duties . . . is to stretch the word beyond its ordinary English meaning" falls flat. It is not just a single word that we are interpreting, but a whole phrase, and more than that, an entire clause within a lengthy contract. Taking a big-picture view, we think the work done by Mr. Harvey, which requires the delivery of

-4-

products as an essential, core component of his job description, is precisely the type of employment that this clause was intended to cover, particularly given that Mr. Harvey purchased this van with the delivery component of his job specifically in mind. We see no genuine ambiguity here, and thus the general rule that "exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured," *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991), does not apply. Accordingly, we conclude that Mr. Harvey's accident was not covered under the terms of the policy.

The Harveys also argue that, even if the accident was not covered on the policy's face, Insurance Company should be estopped to deny coverage because it agreed to cover the vehicle even after one of its agents ("Agent" or "Mr. Busby"[1]) was told how Mr. Harvey intended to use it. Agent was not deposed or called to testify by either party. However, Mr. Harvey testified as follows on direct examination:

> Q. [S]ometime during the term of the policy, did you make a change in vehicles?
>
> A. Well, yeah. We had the truck first and then we bought the van, yeah.
>
> Q. All right. And were you present when switching coverage to the van was discussed?
>
> A. Yes, sir.
>
> * * *
>
> Q. Did you or your wife . . . advise Mr. Busby why the van was being acquired in place of the pickup truck?
>
> A. . . . Yes.
>
> Q. And did you advise him what it would be used for?
>
> A. Sales and deliveries.
>
> Q. And what did Mr. Busby tell you about getting coverage on the van?

---

[1] Two statements by the Harveys' attorney at trial, as reflected in the transcript, indicate that Agent's first name is "Andre." However, the Harvey's complaint, the trial court's order, and Insurance Company's brief state that Agent's first name is "Andrea." All sources refer to Agent as "Mr. Busby."

[At this point, Insurance Company made a hearsay objection, and a lengthy discussion between the trial court and the attorneys followed. The court finally decided to reserve the question for a later decision, and allowed Mr. Harvey's attorney to proceed with the examination.]

Q. What, if anything, did Mr. Busby tell you . . . about whether Farmers Insurance Exchange would provide coverage for the van in the use you described to him?

A. He gave us the insurance. That's all I understood about it. I mean, if I couldn't have used it that way, then he would had to have said something to me about it or he wouldn't have give[n] me the insurance for it.

Q. And did he say, "Well, this insurance won't cover your use of the van"?

A. No.

As an initial matter, we must address the hearsay issue, which the trial court ultimately did not rule upon. As can be seen, Mr. Harvey did not actually testify about anything Agent *said*. Mr. Harvey testified only about what Agent *did* (issued the coverage) and what Agent *did not say* (that "this insurance won't cover your use of the van"). To whatever extent these actions and omissions may be deemed "nonverbal conduct . . . intended . . . as an assertion," Tenn. R. Evid. 801(a)(2), and thus "statements" for purposes of the hearsay rule, they are clearly nonhearsay statements. Indeed, *even if* Mr. Harvey had directly testified that Agent *said* the van would be covered, that *still* would not have been hearsay, at least with regard to the estoppel issue. Hearsay is third-party testimony regarding a declarant's prior statement, "offered in evidence to prove the truth of the matter asserted" by the declarant. Tenn. R. Evid. 801(c). In this case, Mr. Harvey's attorney was attempting to elicit third-party testimony regarding a "matter [allegedly] asserted" by Agent, but he was *not* doing so in order to prove the *truth* of that alleged assertion. Rather, he was trying to prove simply that the assertion was made, regardless of its truth or falsity. In other words, the evidence was intended to demonstrate that Agent *said* the policy would cover Mr. Harvey's intended use of the van, not necessarily that the policy *actually did* cover such use. Eliciting such testimony in support of an estoppel defense does not implicate the hearsay rule, because it is not offered "to prove the truth of the matter asserted."

Having said that, although the testimony in question is not hearsay, it is also insufficient to prove the Harveys' case on the issue of estoppel. As the trial court correctly noted, the elements of estoppel were set forth by this court in **Callahan v. Town of Middleton**, 292 S.W.2d 501 (Tenn. Ct. App. 1954), as follows:

> The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is

calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially[.]

*Id.* at 508. The trial court dismissed the Harveys' estoppel claim on the basis of the first and fifth elements, misrepresentation and reliance:

[T]here was no testimony as to what [Agent] Busby said, if anything, to [the Harveys]. . . . Looking at the case at bar, we note several items. First, there was no evidence that Busby said anything. There was no proof that Busby promised the Plaintiffs any particular type of coverage. Certainly, there was no testimony that Busby made any representations or misrepresentations to the Plaintiffs. Second, the customer must prove reliance under the agent's statements. Here, Mr. Harvey tried to state indirectly his reliance upon Busby. However, Mr. Harvey also testified that he reviewed the contract when received. When asked if he had read the contract after receipt, Mr. Harvey stated: "Briefly". When asked if he had read the exclusions, Mr. Harvey said "Yes".

Again, we do not necessarily agree with the trial court's reasoning *in toto*, but we agree with its holding. Although it is true that "there was no evidence that Busby said anything," this is not necessarily dispositive *vis a vis* the misrepresentation element, since an estoppel claim need not be grounded in a verbal statement. As *Callahan* says, such a claim can also be based on nonverbal conduct "which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert." *Id.* We express no opinion on whether that less stringent burden was met on these facts, but we do not believe the misrepresentation element is the clearest example of the Harveys' failure to prove estoppel.[2] Likewise, on the reliance element, we agree with the trial court that Mr. Harvey was trying "to state indirectly his reliance upon Busby" when he testified that "if I couldn't have used it that way, then he would had to have said something to me about it or he wouldn't have give[n] me the insurance for it." Again, we do not hold that the

---

[2] If Mr. Harvey's uncontradicted testimony is accepted as true (and the court never held otherwise, though it did refer twice to the testimony as "self-serving"), we think it is at least plausible that Agent's silence in the wake of Mr. Harvey's statement that he intended to use the van for "sales and deliveries," coupled with Agent's decision to proceed with the policy change, could potentially be seen as nonverbal conduct conveying the impression that the van would be covered for those purposes. However, the court apparently did not consider this possibility, and we do not find it necessary to make a factual finding on this point, one way or the other.

Harveys successfully established reliance, but we think a failure to prove reliance is not the most solid ground on which to reject their claim.

Instead, we hold – again quoting *Callahan* – that the Harveys failed to demonstrate a "lack of knowledge and of the means of knowledge of the truth as to the facts in question." As we have already held, the written policy exclusions unambiguously state the "truth as to the facts" regarding the coverage of the Harveys' Caravan when used in Mr. Harvey's employment. Certainly, therefore, the Harveys had access to the means of obtaining the requisite knowledge, and it seems Mr. Harvey utilized that access. As the court noted, he testified that he had read the insurance policy's "exclusions," the very portion at issue. The policy language is unambiguous in excluding coverage for the sort of use that Mr. Harvey said he had in mind – in his words, "sales and deliveries." If he still harbored any doubts about this point, even after reading the policy, he could have asked Agent, or another employee of the Insurance Company, for a clear answer. This would have imposed only a trivial burden upon the Harveys. Instead, taking Mr. Harvey's testimony at face value, it appears that he and his wife relied upon their interpretation of Agent's ambiguous silence rather than clarifying the matter, whether by asking questions or by re-reading the unambiguous terms of the policy itself. The law of estoppel tells us that this is not a proper case for equitable relief, and common sense concurs. The evidence in this record does not preponderate against the trial court's refusal to declare that Insurance Company is estopped to deny coverage.

For all of these reasons, we find no error in the court's decision to dismiss the Harveys' declaratory judgment claim. The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, Cindy Goodson Harvey and Ronald W. Harvey, Jr. This case is remanded to the trial court for collection of costs assessed below, pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE