IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 16, 2011 Session

# FRANCES SEWARD BENNETT and DON SEWARD v. CITY OF MEMPHIS.

Direct Appeal from the Chancery Court for Shelby County
No. CH-07-0229-2    Arnold Goldin, Chancellor

No. W2011-00577-COA-R3-CV - Filed December 21, 2011

Plaintiffs sued the City of Memphis, claiming that they were fraudulently induced to sign a sewer easement agreement. The trial court granted summary judgment to the City of Memphis. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Daniel A. Seward, Memphis, Tennessee, for the appellants, Frances Seward Bennett and Don Seward

Jill Madajczyk, Senior Assistant City Attorney, Memphis, Tennessee, for the appellee, City of Memphis

**OPINION**

### I.  FACTS & PROCEDURAL HISTORY

Don Seward and Frances Seward Bennett are siblings who both own properties located along Highway 64 in Memphis, Tennessee. On July 7, 2005, Mr. Seward and Mrs. Bennett both executed separate documents granting sewer easements across their properties in favor of the City of Memphis. On January 31, 2007, Mr. Seward and Mrs. Bennett (collectively, "Plaintiffs") filed a complaint in the chancery court of Shelby County seeking to have the easement agreements set aside on the basis that the agreements were signed in reliance upon "false, misleading, deceptive and fraudulent statements" by City of Memphis employees. Plaintiffs, who do not have sewer service at their properties, claimed that they had signed the easement agreements believing that the City was going to use the easement to install a sewer line that would provide service to their properties. According to Plaintiffs' complaint, they learned in January of 2007 that the easement was being used to install a sewer line that would serve a nearby subdivision on Schaeffer Road, but not their own homes. Plaintiffs sought declaratory and injunctive relief, and in the alternative, a judgment for two million dollars in damages. Plaintiffs' request for temporary injunctive relief was denied, and a force main sewer line was installed on their properties in December 2008.

The City of Memphis filed a motion for summary judgment along with the affidavit of its Real Estate Administrator, Deborah Daniels. Ms. Daniels explained that significant sewer and septic tank problems had arisen in the nearby Schaeffer Road subdivision, which posed an immediate health concern to the subdivision residents. As a result, Ms. Daniels stated, the City developed a plan to install a "temporary force main sewer line" to provide relief to the residents of the subdivision until a "permanent gravity line" could be constructed. According to Ms. Daniels, a force main sewer line, by design, only serves those properties at the end of the sewer line, and it is not possible for properties along the sewer line to tie into it.[1]

Ms. Daniels stated that in order to install the sewer line, it was necessary to obtain easements upon the properties of certain residents living along Highway 64. She said that each affected resident was sent a letter announcing the project and describing the purpose for which the City needed the easement, as well as a copy of the Schaeffer Road Sewer Easement Agreement. The letter stated, in relevant part:

---

[1] Ms. Daniels said that the City does have plans eventually to replace the force main sewer line with a gravity fed sewer line, which, pursuant to city ordinance, Plaintiffs will be able to access, but no date has been set for its construction.

The City of Memphis is in the process of improving the existing sewer easement over and across your property east of Roland Road (see attached engineering drawing.) The project is required to serve downstream property owners with sewer service.

This drawing shows the permanent easement . . . and a temporary construction easement . . . that will be used during the construction phase only.

I will contact you by phone after you have had a chance to look over the plans. If you have any questions, please call . . . .

The Schaeffer Road Sewer Easement Agreement that accompanied the letter, which Plaintiffs eventually signed, stated, in relevant part:

KNOW ALL MEN BY THESE PRESENTS, That for and in consideration of the sum of . . . $1.00 . . . and other valuable consideration paid by the City of Memphis to [Plaintiff] the receipt of which is hereby acknowledged, hereinafter termed Grantor, and for the further consideration hereinafter mentioned, to-wit: the building or construction of a sanitary sewer line in Memphis, Shelby County, Tennessee, the said grantor has this day bargained and sold, and does hereby transfer and convey unto the City of Memphis, the right of entry upon and occupancy by a sanitary sewer line over a certain strip of land lying in Shelby County, Tennessee.

Ms. Daniels stated that the City's Real Estate Department maintained a file on each property affected by the proposed sewer line with notes of all communications between the Real Estate Department and the property owner. Ms. Daniels explained that some affected residents simply signed and returned the easement agreements without further discussion, while the majority sought individually negotiated agreements with the Real Estate Department. Ms. Daniels said that she had examined the files for both Plaintiffs' properties and that the files indicated there was no communication other than the initial notice letters and the easement agreements that were signed and returned by mail.

In response to the City's motion for summary judgment, Plaintiffs relied upon three affidavits, which, they contended, created genuine issues of material fact. Plaintiffs filed the affidavit of Don Bennett, who was the husband of Plaintiff Frances Seward Bennett. He stated that before his wife signed the easement agreement, he contacted "the City of Memphis" about the proposed sewer easement, and he was informed "by an employee of the City of Memphis" that the easement was for a common sewer line that residents on Highway 64 in the Eads area would be able to use. Mr. Bennett stated that the aforementioned area included the properties owned by Plaintiffs.

Plaintiff Frances Seward Bennett also filed her own affidavit, stating that her husband told her that he was informed by an employee of the City of Memphis that the easement was for a common sewer line that residents on Highway 64 in the Eads area would be entitled to use. She said that she signed the easement agreement based on the "false representations [made] by the employee of the City of Memphis" to her husband.

Plaintiff Don Seward, who is the brother of Plaintiff Frances Seward Bennett, filed an affidavit as well. He stated that he had, at some earlier time, contacted "the City of Memphis" about its plans for a common sewer line, and he was informed that it "would happen at some unknown time in the future." Plaintiff Seward then stated that Mr. Bennett told him that "an employee of the City of Memphis" told him that the proposed easement was for the common sewer line that residents on Highway 64 in the Eads area would be able to use. Plaintiff Seward said that "part of" his decision to sign the easement agreement was based on the statements made by the City of Memphis employee to Mr. Bennett.

At the hearing on the motion for summary judgment, the City of Memphis argued that the affidavits submitted by Plaintiffs in response to the motion for summary judgment contained inadmissible hearsay and information made without personal knowledge of the affiant, and therefore, Plaintiffs had failed to produce admissible evidence to rebut the City's evidence that it did not have any communication with the property owners other than the mailing of the notice letter and easement agreement. In response, Plaintiffs argued that the letter and easement agreement were ambiguous, such that a reasonable person would believe that he or she would receive sewer service by signing the easement agreement.

Following the hearing, the trial court entered summary judgment in favor of the City of Memphis, finding that the easement agreement was "clear and unambiguous" and that "there [was] nothing in the agreement that makes any representation to the effect that the Plaintiffs were going to be able to tie into the sewer line." The trial court went on to state that because it found the easement agreement unambiguous, there was no need to look beyond the terms of the easement agreement in order to determine the parties' intent. The court then stated that it found "no issue of material fact as to fraud, misrepresentation, undue influence, or any situation of like character, relating to the facts and circumstances surrounding the execution" of the agreement. Plaintiffs timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, Plaintiffs insist that the trial court erred in failing to consider parol evidence regarding their allegations of fraudulent inducement. They also argue that the trial court erred in granting summary judgment to the City of Memphis. The City of Memphis claims that the trial court properly granted it summary judgment because Plaintiffs failed to

present admissible competent evidence in response to its motion for summary judgment. We reverse and remand for further proceedings.

### III. DISCUSSION

#### A. Parol Evidence

"'Parol evidence is generally inadmissable to contradict, vary, or alter the terms of a written contract where the written instrument is valid, complete, and unambiguous.'" *Biancheri v. Johnson*, Nos. M2008-00599-COA-R3-CV, M2007-02861-COA-R3-CV, 2009 WL 723540, at *9 n.9 (Tenn. Ct. App. Mar. 18, 2009) (quoting *Butler v. Butler*, No. W2007-01257-COA-R3-CV, 2008 WL 5396019, at *6 (Tenn. Ct. App. Dec.23, 2008)). However, there are a number of exceptions to the parol evidence rule, and in Tennessee, extrinsic evidence can be admitted to establish allegations of fraud or fraudulent misrepresentation in the negotiation of a contract. *Hines v. Wilcox*, 33 S.W. 914, 915-16 (Tenn. 1896); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 588 (Tenn. Ct. App. 1980). Simply stated, "the [parol evidence] rule *does not apply* to claims of fraudulent misrepresentation in inducement of a contract." *Biancheri*, 2009 WL 723540, at *9 n.9. Therefore, we find that the trial court erred in finding that it was not necessary to look beyond the terms of the easement agreement when considering Plaintiffs' claims.

#### B. Summary Judgment Standards

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). In other words, "[i]f reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists." *Green*, 293 S.W.3d at 514 (citing *Martin*, 271 S.W.3d at 84; *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993)). "If, on the other hand, the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then no material factual dispute exists, and the question can be disposed of as a matter of law." *Id.* (citing

*Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999)).

"The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." **Green**, 293 S.W.3d at 513 (citing *Martin*, 271 S.W.3d at 83; *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." **Martin**, 271 S.W.3d at 83 (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* at 84 (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." *Id.* (citing *Byrd*, 847 S.W.2d at 215).

If the moving party does make a properly supported motion, the nonmoving party is then required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Id.* (citing *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd*, 847 S.W.2d at 215). "The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.6). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley*, 960 S.W.2d at 588).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Id.* However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

### C.   *Fraudulent Inducement*

"Misrepresentation goes to the inducement of the contract and precludes a finding of mutual assent.   The result is that the contract is voidable by the recipient of the

misrepresentation." ***Scruggs v. Roach***, No. 03A01-9209-CH-00358, 1993 WL 93362, at *4 (Tenn. Ct. App. W.S. Mar. 31, 1993) *perm. app. denied* (Tenn. July 26, 1993); *see also* ***Biancheri***, 2009 WL 723540, at *11. "To be successful, a party making a fraudulent inducement claim has the burden of proving that the defendant (1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted from this reliance." ***Baugh v. Novak***, 340 S.W.3d 372, 388 (Tenn. 2011) (citing *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630-31 (Tenn. Ct. App. 2000)).

### D.    Plaintiffs' Claim

The City of Memphis argues that it negated an essential element of Plaintiffs' fraudulent inducement claim by establishing, through the affidavit of Ms. Daniels, that no false statements were made to Plaintiffs. As explained above, Ms. Daniels stated that, according to the Real Estate Department's files, there was no communication between the Real Estate Department and Plaintiffs except the letter and attached easement agreement. We conclude that the City of Memphis did affirmatively negate an essential element of Plaintiffs' claim by producing evidence that tended to disprove Plaintiffs' factual allegation that they relied upon false statements by City of Memphis employees.

As a result, Plaintiffs were required to "produce evidence of specific facts establishing that genuine issues of material fact exist" in order to show that summary judgment was not warranted. ***Martin***, 271 S.W.3d at 84. They could satisfy their burden of production by: "(1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." ***Id.*** Plaintiffs relied upon the three affidavits in an effort to demonstrate that an employee of the City of Memphis made allegedly false statements to Don Bennett, the husband of Plaintiff Frances Seward Bennett. The City of Memphis argues that the relevant testimony in all three affidavits was inadmissible hearsay, and therefore, Plaintiffs failed to meet their burden of production in response to the motion for summary judgment.

"The legal sufficiency of the evidentiary materials in the record when a court considers a summary judgment motion is of pivotal importance." ***Davis v. McGuigan***, 325 S.W.3d 149, 168 (Tenn. 2010) (J. Koch, dissenting). "When issues have been raised regarding the compliance of affidavits with the standards prescribed by Tenn. R. Civ. P. 56 or the admissibility of evidence contained in these affidavits, the threshold issue of

admissibility should be resolved before determining whether or not unresolved questions of fact exist."[2] *Id.* (citing *Travis v. Ferraraccio*, No. M2003-00916-COA-R3-CV, 2005 WL 2277589, at \*4-5 (Tenn. Ct. App. Sept. 19, 2005)). "*After* these threshold questions have been addressed, the trial court may then determine whether, taking the strongest view of the *admissible* evidence in favor of the non-moving party, there remain any genuine issues of material fact to be decided at trial." *Id.* (citing *Byrd*, 847 S.W.2d at 210-11) (emphasis added); *see also* **Green**, 293 S.W.3d at 514 (instructing courts deciding summary judgment motions to first focus on whether the evidence establishing the facts is admissible).

The two affidavits submitted by each of the Plaintiffs recounted what Plaintiffs were told by Don Bennett regarding his conversation with the City of Memphis employee. The testimony of Plaintiffs as to what they were told by Mr. Bennett is clearly inadmissible hearsay. *See* Tenn. R. Evid. 801. For facts to be considered at the summary judgment stage, they must be admissible in evidence. **Green**, 293 S.W.3d at 513 (citing *Byrd*, 847 S.W.2d at 215-16; Tenn. R. Civ. P. 56.06). Tennessee Rule of Civil Procedure 56.06 provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "To permit an opposition to be based on evidence that would not be admissible at trial would undermine the goal of the summary judgment process to prevent unnecessary trials since inadmissible evidence could not be used to support a jury verdict." **Byrd**, 847 S.W.2d at 216. Clearly, Plaintiffs would not be allowed to establish that a false statement was made by testifying at trial as to what Don Bennett told them about his conversation with an employee of the City of Memphis. Because the relevant statements in Plaintiffs' affidavits were inadmissible hearsay, they cannot be considered for purposes of summary judgment. *See* **Perlberg v. Brencor Asset Mgmt., Inc.**, 63 S.W.3d 390, 397 (Tenn. Ct. App. 2001); **Tomlin v. Warren**, 958 S.W.2d 354, 355 (Tenn. Ct. App. 1997) (explaining that hearsay testimony in affidavits may not be used to support or oppose summary judgment).

The affidavit testimony of Don Bennett, however, must be considered separately. Mr. Bennett stated that he contacted "the City of Memphis" about the proposed easement, and that "an employee of the City of Memphis" told him that the easement was needed for a common sewer line that residents on Highway 64 in the Eads area would be able to use. The

---

[2] We normally review a trial court's decisions regarding the admissibility of evidence using the abuse of discretion standard, and that standard of review should also be used at the summary judgment stage. *Id.* at 169 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 142-43 (1997)). However, in this case, the trial court declined to consider the evidence in the affidavits not because of hearsay concerns but based upon its erroneous conclusion that the parol evidence rule barred their consideration. Consequently, the trial judge did not make a finding regarding the admissibility of the alleged hearsay testimony.

City of Memphis argues on appeal that this testimony constituted hearsay and that Plaintiffs failed to establish the applicability of any exception to the hearsay rule. However, we find that Don Bennett's testimony about the employee's false statement does not qualify as hearsay in the first instance because the employee's statement was not offered for the truth of the matter asserted but instead for the mere fact that the statement was uttered, as an "operative fact" of the fraudulent inducement claim. "A statement introduced to prove only that it was made, regardless of the truth or falsity of the statement, does not violate the rule against hearsay." *State v. Brown*, 836 S.W.2d 530, 551 (Tenn. 1992) (citing *Cannon v. Chadwell*, 25 Tenn.App. 42, 150 S.W.2d 710, 712 (1941)).

> One of the more difficult, though infrequently encountered, categories of nonhearsay evidence encompasses operative facts, sometimes referred to as verbal acts. Operative facts are words that operate, by force of law, to cause legal consequences wholly apart from the truth or falsity of the words. Substantive law may make the utterance of words an event that causes a change in legal relationships, irrespective of the truth or falsity of the words or the credibility of the speaker. Such words are not hearsay by definition since they are not being used to prove their truth. Indeed, the truth or falsity of the words is irrelevant; what matters is that the words were uttered.

*State v. Eads*, No. E2006-02792-CCA-R3-CD, 2008 WL 2152494, at *8 (Tenn. Crim. App. 2008) (quoting Neil P. Cohen et al., *Tennessee Law of Evidence* § 8.01[6][a] (5th ed. 2005)). Some examples of nonhearsay operative facts include words of acceptance in the context of whether a contract was formed and words of donative intent when deciding whether an object was a gift. *Id.* (citing Cohen, § 8.01[6][b], [c]). In a case involving rights acquired to land by prescription, one party's out-of-court statements giving the other permission to remain on the property were said to have had "legal significance and effectuate[d] legal consequences, in and of themselves," and therefore, the statements were not inadmissible hearsay. *Brown v. Daly*, 968 S.W.2d 814, 817-18 (Tenn. Ct. App. 1997). In another case involving tortious interference with a business relationship, the Court recognized that the defendant's statement about the plaintiff to his business partner "could be nonhearsay operative facts which are admissible." *Collins v. Greene County Bank*, 916 S.W.2d 941, 947 (Tenn. Ct. App. 1995). The Court compared the situation to a defamation action, where it is necessary to prove that the defendant wrote or spoke defamatory words. *Id. See also Harvey v. Farmers Ins. Exchange*, 286 S.W.3d 298, 304 (Tenn. Ct. App. 2008) (explaining that testimony about what an insurance agent said did not implicate the hearsay rule when offered in support of an estoppel defense because it was not offered to prove the truth of the matter asserted: "In other words, the evidence was intended to demonstrate that Agent *said* the policy would cover Mr. Harvey's intended use of the van, not necessarily that the policy *actually did* cover such use."); *Bailey v. USF Holland, Inc.*, 444 F.Supp.2d 831, 847 (M.D. Tenn. 2006)

(involving racial discrimination claims and holding that testimony about the racial epithets used was not hearsay but verbal acts offered to show the statements were made).

In a situation more comparable to the one before us,[3] involving a charge of obtaining money under false pretenses, the Court of Criminal Appeals held that it was proper to allow a bank president to testify about an out-of-court telephone conversation that led to the exchange of the money. *State v. Kenner*, 640 S.W.2d 51, 55 (Tenn. Crim. App. 1982). Because the testimony was not offered to prove the truth of the statements made, the testimony was "admissible as a verbal act as a part of the fraudulent transaction and as res gestae." *Id.*

Finally, courts in other jurisdictions have held that fraudulent out-of-court statements are admissible as nonhearsay operative facts in various instances. *See, e.g.*, *U.S. v. Kirk*, 844 F.2d 660, 663 (9th Cir. 1988) (finding that the statement constituted the "operative fact" of the fraud alleged and was not offered for the truth of the matter asserted but to show that a misrepresentation was made); *Alliance Nat. Bank & Trust Co. v. State Sur. Co.*, 390 N.W.2d 487, 492-93 (Neb. 1986) (explaining that the misrepresentations were independently material to a determination of whether fraud had been perpetrated and constituted "a premise or predicate in a claim for fraud," therefore, the misrepresentations were verbal acts and not hearsay); *Tinnes v. Immobilaire IV, Ltd.*, No. 00AP-87, 2001WL 122073, at *7 (Ohio Ct. App. Feb. 13, 2001) (holding that alleged misrepresentations offered to establish an element of fraud claims should have been admitted as "verbal acts"); *Busse v. Pacific Cattle Feeding Fund No. 1, Ltd.*, 896 S.W.2d 807, 816 (Tex. Ct. App. 1995) (explaining that statements offered only to show that they were made, as elements of the fraud the plaintiff was trying to prove, were admissible as operative facts). *See also U.S. v. Howard*, 751 F.2d 336, 339 (10th Cir. 1984) (finding that statements constituting fraudulent inducements made to get the victims to part with their property were not hearsay because they were not offered to prove the truth of the matter asserted).

We similarly conclude that Don Bennett's testimony about the statement made by the City of Memphis employee is admissible as the statement constituted a nonhearsay operative fact. The evidence was offered not to prove the truth of the matter asserted, but rather to prove the operative fact that a misrepresentation was made that induced Plaintiffs to sign the easement agreements. The mere utterance of the statement has legal significance as an

---

[3] In a fraudulent inducement case like the one before us, this Court stated that "a party may introduce an out of court statement in order to prove that one relied on the statement when entering a transaction, as long as the reliance of the parties is an issue in the lawsuit." *Caterpillar Financial Services Corp. v. Page*, 1991 WL 191621, at *3 (Tenn. Ct. App. Sept. 30, 1991). However, we did not specifically discuss nonhearsay operative facts.

element of the fraudulent inducement claim that Plaintiffs were trying to prove.

Because we find that Don Bennett's affidavit contained admissible evidence that could be considered for purposes of summary judgment, we further conclude that Plaintiffs met their burden of production in response to the motion for summary judgment. Viewing the evidence in the light most favorable to Plaintiffs, as we are required to do, ***Martin***, 271 S.W.3d at 83, we find that Plaintiffs have demonstrated that genuine issues of material fact exist with regard to their fraudulent inducement claim such that it was improper to grant summary judgment to the City of Memphis.[4]

In conclusion, we find that the City of Memphis made a properly supported motion for summary judgment by negating an essential element of Plaintiffs' claim for fraudulent inducement – the element of a false statement. In response, however, Plaintiffs produced admissible evidence of specific facts establishing that genuine issues of material fact existed. Accordingly, we find that the City of Memphis was not entitled to summary judgment.

## IV. CONCLUSION

For the aforementioned reasons, we reverse and remand the decision of the chancery court for further proceedings. Costs of this appeal are taxed to the appellee, the City of Memphis, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[4] We note that the City of Memphis limited its argument on appeal to insisting that the affidavits did not contain admissible evidence that could be considered for purposes of summary judgment. The City of Memphis offered no alternative argument to suggest that summary judgment would be inappropriate if the affidavit testimony was deemed admissible. Having concluded that one of the affidavits did contain admissible testimony, we have resolved the issue presented, and we decline to consider whether summary judgment would have been appropriate on other grounds not raised or briefed by the parties.